UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | Docket No.: 1:21-cv- |
| Plaintiff, | |
| -vs.- | |
| BAS HOLDING CORP. & BROCKTON AGRICULTURAL SOCIETY, | |
| Defendants. | |

**COMPLAINT FOR DECLARATORY RELIEF**

Philadelphia Indemnity Insurance Company, by and through its undersigned counsel, brings this *Complaint for Declaratory Relief* pursuant to 28 U.S.C. §§ 2201 *et seq.*, G.L. c. 231A § 1 *et seq.*, and *Fed. R. Civ. P.* 57, and alleges as follows:

**PARTIES**

1. Philadelphia Indemnity Insurance Company ("PIIC") is an insurance company organized under the laws of the Commonwealth of Pennsylvania. It maintains its principal place of business at One Bala Plaza in Bala Cynwyd, Pennsylvania.

2. BAS Holding Corp. ("BAS") is a Delaware corporation that, according to the records of the Secretary of the Commonwealth of Massachusetts, maintains its principal place of business at 1958 Broadway in Raynham, Massachusetts.

3. Brockton Agricultural Society is a Massachusetts non-profit corporation that, according to the records of the Secretary of the Commonwealth of Massachusetts, maintains its principal place of business in Brockton, Massachusetts. According to those same records, Brockton Agricultural Society merged into BAS in January 2016.

## JURISDICTION & VENUE

4. This Court has original jurisdiction over this matter because the citizenship of the parties is completely diverse, and, as explained below, the amount in controversy exceeds the sum of $75,000.  *See* 28 U.S.C. § 1332.

5. Venue in this Court is proper because the defendants are citizens of Massachusetts that reside in Bristol and Plymouth Counties, which makes them subject to personal jurisdiction in this District. The events giving rise to this lawsuit occurred in Plymouth County. And, without an adjudication of the claims set forth herein, the plaintiff will be at risk of suffering damages within Massachusetts.  *See* 28 U.S.C. § 1391.

## FACTS

### The Insurance Policy

6. PIIC sold an insurance policy bearing No. PHPK2149023 to BAS, which was in force over the period from June 27, 2020, to June 27, 2021 (the "Policy"). A true and correct copy of the Policy is attached hereto as **Exhibit A**.

7. The Policy includes a named insured schedule that lists each of the following as additional insureds: Brockton Agricultural Society, Middleborough Agricultural Society, and Brockton Fair Caterers, Inc.

8. Middleborough Agricultural Society is a Massachusetts non-profit corporation that maintains its principal place of business in Massachusetts.

9. Brockton Fair Caterers, Inc., is a Massachusetts corporation that maintains its principal place of business in Massachusetts.

### What The Insurance Policy Covers

10. In relevant part, subject to its terms and conditions, the Policy insures against the

risk of fire damage to certain identified buildings located on the Brockton Fairgrounds in Brockton, Massachusetts.

11. The Policy's Declarations describe the premises insured by the Policy with the following words: "See Schedule Attached."

12. The Policy contains a separate "Locations Schedule" that applies to the Policy's *Commercial Property Coverage Part*, which lists seven (7) buildings, numbered sequentially as "Bldg. No. 0001" through "Bldg. No. 0007". Each of the buildings is shown as having an address of 433 Forest Avenue in Brockton, Massachusetts.

13. Through its broker, Ward Bennett of AssuredPartners Northeast, LLC, BAS described each of the seven (7) buildings in detail.

14. On June 18, 2018, Mr. Bennett sent an e-mail to PIIC in which he produced detailed descriptions of each of the seven (7) buildings listed on the "Locations Schedule" that is attached to the Policy. A true and correct copy of that e-mail is attached hereto as **Exhibit B**.

15. Mr. Bennett described Building No. 0001 as a grandstand, consisting of approximately 25,000 square feet, which was built in 1965 and had its electrical and plumbing systems updated in 2000.

16. Mr. Bennett described Building No. 0002 as the office of the Brockton Fair. The one-story frame building has two sections, totaling 2,000 square feet, and was built in 1970. The building had its electrical, heating, and plumbing systems updated in 2008.

17. Mr. Bennett described Building No. 0003 as an electrical generator. It is not a building but, instead, is a piece of electrical generation equipment.

18. Mr. Bennett described Building No. 0004 as one that is used for exhibits of poultry and produce when the Brockton Fair is running. The 850 square-foot building was built

in 1960, had its electric and plumbing systems updated in 2000, and had its heating system updated in 2006.

19. Mr. Bennett described Building No. 0005 as one that was used for storage. The building is described as having been built in 1980, and it consists of 1,250 square feet. The building's heating system was updated in 2009.

20. Mr. Bennett described Building No. 0006 as an 800 square-foot restroom that was constructed in 1965, and had its plumbing and electrical systems updated in 2008.

21. Finally, Mr. Bennett described Building No. 0007 as a two-story dwelling that is rented to tenants. He provided a picture of the dwelling with his e-mail: it shows a pickup truck in front of a modest, two-story New Englander-style house.

22. On June 22, 2018, Mr. Bennett prepared a "statement of values" that matches the descriptions of the properties described in his e-mails. George Carney, the president of BAS, signed the statement of values on June 23, 2018. A true and correct copy of the signed statement of values is attached hereto as **Exhibit C**.

23. PIIC used Mr. Bennett's descriptions and the statement of values to underwrite Policy No. PHPK1841038, which it sold to BAS and which was in force for the period from June 27, 2018, to June 27, 2019. A true and correct copy of the Locations Schedule for Policy No. PHPK1841038 is attached hereto as **Exhibit D**.

24. Mr. Bennett provided a substantively identical statement of values on June 17, 2019, which Mr. Carney again signed on June 24, 2019. A true and correct copy of the signed statement of values is attached hereto as **Exhibit E**.

25. PIIC used Mr. Bennett's descriptions and the statement of values from 2019 to underwrite Policy No. PHPK2001841, which it sold to BAS and which was in force for the

period from June 27, 2019, to June 27, 2020. A true and correct copy of the Locations Schedule for Policy No. PHPK2001841 is attached hereto as **Exhibit F**.

26. Mr. Bennett provided another substantively identical statement of values on June 18, 2020, which Mr. Carney against signed on June 23, 2020. A true and correct copy of the statement of values is attached hereto as **Exhibit G**.

27. PIIC used Mr. Bennett's descriptions and statement of values from 2020 to underwrite the Policy. A true and correct copy of the Locations Schedule for the Policy is attached hereto as **Exhibit H**.

### The Loss

28. On March 17, 2021, a fire damaged a building on the Brockton Fairgrounds.

29. The fire occurred at what is commonly called the "State Building" – a vacant building that was constructed in 1931 and consists of approximately 12,292 square feet of interior space, which was built as a replica of the Old State House in downtown Boston. The record owner of the State Building is the Brockton Agricultural Society.

30. Through its insurance agent, AssuredPartners Northeast, LLC, BAS submitted a property loss notice for the State Building dated March 17, 2021. A true and correct copy of that loss notice is attached hereto as **Exhibit I**.

31. The loss notice identifies BAS as the insured.

32. The loss notice describes the loss as "fire to building on fairgrounds" and then specifies the location as "building #4" at 433 Forest Avenue in Brockton.

33. The loss notice describes the damage to the building as a "total loss".

34. Upon information and belief, BAS estimates that the replacement-cost value of the State Building is approximately $2.5 million.

### BAS Demands Reference

35. On May 27, 2021, BAS demanded reference against PIIC, pursuant to the Policy and G.L. c. 175 §§ 100 *et seq*. A true and correct copy of that demand, which PIIC first received on June 1, 2021, is attached hereto as **Exhibit J**.

36. So as not to waive any rights under the statute, PIIC responded to the demand for reference through counsel on June 7, 2021. A true and correct copy of that letter is attached hereto as **Exhibit K**.

37. On June 16, 2021, counsel for PIIC received a letter of representation from the law firm of Sloane and Walsh, LLP, stating that that firm would represent the interests of BAS. A true and correct copy of that letter is attached hereto as **Exhibit L**.

### PIIC Attempts To Investigate The Loss

38. That same day, PIIC exercised its rights under the Policy and demanded that BAS submit to an examination under oath on certain topics relevant to the loss and the subsequent insurance claim. A true and correct copy of that request is attached hereto as **Exhibit M**.

39. On August 3, 2021, BAS produced Susan Rodrigues to be examined under oath. Although she acknowledged that she was prepared to testify as to each topic requested by PIIC, she was unfamiliar with much of the substantive information discussed during the examination.

40. Ms. Rodrigues was unable to identify the buildings listed on the statement of values that Mr. Carney had signed in 2020.

41. Ms. Rodrigues was unable to testify whether the State Building was occupied at the time of the fire.

42. Ms. Rodrigues was unable to provide significant information regarding BAS' claim that the State Building was being used for "storage" at the time of the fire.

43. Instead, Ms. Rodrigues provided the names of various individuals who may have had information about those matters, as well as other matters that would be relevant to PIIC's investigation of the claim.

44. The next day, PIIC requested that the individuals identified by Ms. Rodrigues as well as George Carney be produced for examination under oath. A true and correct copy of that written request is attached hereto as **Exhibit N.**

45. The same afternoon (August 4, 2021), BAS refused to provide any further individuals for examination under oath.

46. BAS has not responded to further requests to make those individuals available for examination under oath, as required by the Policy.

### BAS Refuses To Explain Itself

47. On August 13, 2021, PIIC formally disclaimed coverage for the claim presented by BAS relative to the State Building.

48. In a lengthy letter to BAS' counsel, PIIC set forth the foregoing facts and asked for a written explanation if BAS had a contrary view. A true and correct copy of PIIC's letter is attached hereto as **Exhibit O**.

49. In light of the disclaimer and the evidence that PIIC provided to BAS, PIIC requested that BAS withdraw its demand for reference.

50. BAS declined to withdraw its demand for reference, and will not agree to stay the reference proceedings.

51. On August 24, 2021, PIIC again wrote to counsel for BAS. In that letter, PIIC proposed that BAS and PIIC agree to stay the reference proceeding pending a determination as to whether the Policy even covers the State Building – stating that, if the Policy does provide

coverage, PIIC will submit to reference. A true and correct copy of PIIC's letter is attached as **Exhibit P**.

52. To date, BAS has refused to explain why it believes that the State Building is covered under the Policy.

53. To date, BAS has not responded to the proposal that PIIC made in its letter dated August 24, 2021.

## COUNT 1
### (Declaratory Relief – State Building Not Covered)

54. PIIC incorporates by reference all of the allegations in Paragraphs 1-53 above.

55. Because the State Building is not listed on the Locations Schedule, the Policy does not insure the State Building.

56. As a result, the Policy cannot provide coverage for the fire damage to the State Building that occurred on March 17, 2021.

## COUNT II
### (Declaratory Relief – Coverage Excluded)

57. PIIC incorporates by reference all of the allegations in Paragraphs 1-56 above.

58. The Policy contains Commercial Property Form CP 01 09 10 00, entitled "Massachusetts Changes." That endorsement modifies insurance provided under the *Commercial Property Coverage Part* of the Policy.

59. In part, Form CP 01 09 10 00 states:

> **B.** If loss or damage is caused by fire or lightning, the **Vacancy** Loss Condition is replaced by the following:
>
> **VACANCY OR UNOCCUPANCY**
>
> If the building where loss or damage occurs, whether intended for occupancy by owner or tenant, has been vacant or unoccupied for more than:
>
> …

2. 30 consecutive days for all other premises;

immediately before that loss or damage, we will not pay for the loss or damage.

A building is vacant when it does not contain enough business personal property to conduct customary operations.

…

**G.** The following is added:

### STANDARD FIRE POLICY PROVISIONS

. . .

**Conditions Suspending Or Restricting Insurance**  Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured; or (b) while the described premises, whether intended for occupancy by owner or tenant, are vacant or unoccupied beyond a period of sixty consecutive days, for residential premises of three units or less and thirty (30) consecutive days for all other premises, or (c) as a result of explosion or riot, unless fire ensue, and in that event for loss by fire only.

60. No later than 2019, the State Building had been surrounded by a chain-link fence.

61. No later than 2019, the State Building's first-floor windows had been boarded up.

62. At the time of the fire, the interior and exterior walls of the State Building were covered with prominent, extensive graffiti.

63. Immediately after the fire, a representative of BAS who was interviewed on television referred to homeless people residing in the State Building.

64. BAS has refused to make any individuals identified by Ms. Rodrigues as having knowledge or information concerning such matters available to PIIC for examination, as the Policy requires.

65. The State Building was vacant at the time of the fire, and had been for more than 30 consecutive days.

66. As a result, any coverage that might be available for the fire is excluded from

coverage, by the plain terms of the Policy.

## COUNT III
### (Declaratory Relief – Failure to Submit to Examination Under Oath)

67. PIIC repeats and realleges all of the allegations in Paragraphs 1-66 above.

68. The Policy requires BAS to submit to examination under oath by any person designated by PIIC, as often as may reasonably be required.

69. Ms. Rodrigues was not able to give testimony on many of the topics about which PIIC inquired on August 3, 2021, and in the course of her testimony she provided the names of other individuals who worked for or on behalf of BAS who could provide the requested information.

70. BAS has refused to make those individuals identified by Ms. Rodrigues available for examination under oath.

71. BAS has similarly refused to produce George Carney, its sole officer, for examination under oath.

72. PIIC has repeatedly requested that BAS make those individuals available for examination under oath, but BAS has failed to respond.

73. BAS is in breach of its obligations under the Policy.

74. BAS has failed to cooperate with PIIC in the investigation of this loss.

75. PIIC has been prejudiced by BAS' refusal to comply with its obligations under the Policy.

76. Accordingly, as a matter of law, PIIC is not required to pay any claim for or arising out of the fire at the State Building.

## COUNT IV
### (Injunctive Relief)

77. PIIC repeats and realleges all of the allegations in Paragraphs 1-76 above.

78. Reference is arbitration by a panel of three, pursuant to the provisions of G.L. c. 175 § 101B.

79. Because PIIC does not insure the State Building, it would be burdensome, oppressive, and uneconomical to compel PIIC to engage in potentially protracted, costly, and time-consuming arbitration proceedings about the value of the State Building.

80. Indeed, if any other insurer actually insures the State Building, the reference award would not be effective against that insurer, or even comport with basic notions of due process.

81. The more efficient way to proceed with this matter would be to stay the reference pending the outcome of this lawsuit, which asks the Court to declare whether the State Building is within the coverage afforded by the Policy – which PIIC has proposed to BAS.

82. If the State Building is within coverage, PIIC will submit to reference to determine the value of the claim, as the Policy requires and as PIIC has proposed.

83. Until that threshold question is determined, the interests of justice require that the reference be stayed.

## PRAYERS FOR RELIEF

WHEREFORE, PIIC asks that the court:

a. Grant it injunctive relief by staying the reference instituted by BAS, pending a determination of whether the Policy insures the State Building;

b. Declare that the Policy does not insure the State Building;

c. In the alternative, declare that the fire loss to the State Building is not within the Policy's coverage;

d. Declare that PIIC need not pay any benefits that might be available under the Policy due to BAS' breach of its obligations under the Policy, including its refusal to submit to examinations under oath;

e. Enter judgment in PIIC's favor;

f. Award to PIIC its costs and reasonable attorneys' fees; and

g. Grant to PIIC such other, further, and different relief as the Court thinks proper.

Respectfully submitted,

**PHILADELPHIA INDEMNITY INSURANCE COMPANY**

By its attorneys,

By: */s/ David W. Zizik*
   David W. Zizik (BBO #540780)
SULLOWAY & HOLLIS, P.L.L.C.
40 Westminster Street – Suite 201
Providence, Rhode Island 02903
(401) 421-1238 telephone
(781) 658-2532 facsimile
dzizik@sulloway.com

-and-

By: /s/ *Alexander G. Henlin*
   Alexander G. Henlin (BBO #660474)
SULLOWAY & HOLLIS, P.L.L.C.
9 Capitol Street
Concord, New Hampshire 03301
(603) 223-2800 telephone
(603) 226-2404 facsimile
ahenlin@sulloway.com

Dated: September 24, 2021